## DARBY v. STRIBLING.

## MURPHY v. SAME.

## WILEY v. SAME.

A guardian holding a note belonging to the estates of his wards given for the purchase money of a negro slave consented in 1872 to take judgment against the makers of the note, then perfectly solvent, for one-third of the amount due, because of an agreement then prevailing among the lawyers at that bar, induced by the rulings of their presiding judge. In 1871 the Supreme Court had twice decided that such debts were collectible. *Held,* that the guardian was liable to account to his wards for the full amount of the note.

Before WALLACE, J., Abbeville, February, 1883.

In this case the Hon. I. D. Witherspoon, judge of the Sixth Circuit, sat in the place of Mr. Justice McGowan, disqualified.

The opinion states the case. The master gave the following reasons for his findings :

In the case before us the guardian very wisely did not collect this note in Confederate money. Immediately, and for several years after the war, there was great uncertainty whether negro debts could be collected at all. Indeed, Judge Orr, as I have said, had held that they could not be. He dismissed many cases be-

---

[1] This ends the cases of April Term, 1884. The last eleven of these cases were heard at the adjourned April Term, in November.

cause the parties would not accept judgment for one-third of the amount. This, I take it, gave rise to the rule adopted by this bar in such cases. As Mr. Lee says in his testimony, this was considered the best that could be done in the cases, and was generally acted upon here. It is true that judgment was not taken in this case till more than a year after the decision in *Calhoun* v. *Calhoun,* wherein it was held that negro debts were collectible. But the case was in the hands of the guardian's attorney, and I have no doubt he acted upon his advice. Mr. Lee, who knew Mr. Willard well, says that he was a cautious man, in money matters. The manner in which he administered the estates that came into his hands negatives the idea of any *mala fides* on his part, for he has paid out more than he received. So that upon a review of the whole case I do not think that his estate should be held liable for the whole amount of the note. ·

*Mr. Samuel C. Cason,* for appellant.

*Mr. W. H. Parker,* contra.

January 19, 1885. The opinion of the court was delivered by

MR. JUSTICE WITHERSPOON. Each of the above entitled actions involves the same questions and were heard together. On June 9, 1857, James C. Willard was appointed guardian of the plaintiffs, E. J. Darby, M. A. Murphy, and N. J. Wiley, respectively, whose maiden name was Magrath. Willard, the guardian, died August 21, 1876, without settling with his said wards. Thomas Thomson became the administrator of Willard, and he died in 1881 without a settlement with said plaintiffs. John V. Stribling, the defendant, is the administrator *de bonis non* of James C. Willard, the deceased guardian of said plaintiffs. These actions were instituted in September, 1882, for the purpose of requiring the defendant, as administrator *de bonis non,* to account for the estate of the plaintiffs, E. J. Darby, M. A. Murphy, and N. J. Wiley, that came into the hands of their deceased guardian, James C. Willard.

It appears that the estate of the said plaintiffs in the hands of

their said guardian consisted of $900, the proceeds of the sale of a negro woman, sold on credit under order of court in 1860. Thomas Leroy was the purchaser of said negro and executed his note for the purchase money, with James P. Leroy and J. H. Britt as sureties. On November 16, 1872, the deceased guardian obtained judgment in the Common Pleas for Abbeville County against the sureties on said note for $306.84, the note having been reduced to a little more than one third of the amount thereof, according to a custom then prevailing in said county, with the approval of the then presiding judge and the members of the Abbeville bar, with reference to the collection of such notes. The defendant alleges in his answer that before receiving the amount on the judgment aforesaid, the deceased guardian had paid out for the respective plaintiffs more than he received for them on said judgment, and prays that plaintiffs' complaint be dismissed with costs.

It was referred to the master for Abbeville County to state the accounts of the deceased guardian and report thereon. The master reports that the deceased guardian paid out for plaintiffs more than he received for them respectively upon the judgment aforesaid. The master concludes that the estate of the deceased guardian is not responsible for the whole amount of the note, as the guardian took judgment on the note in accordance with a rule then generally acted upon at the Abbeville bar. The master therefore recommends that plaintiff's complaint in each of the above actions be dismissed with costs.

Upon hearing the testimony, the master's report, and plaintiffs' exceptions thereto, Judge Wallace sustained plaintiffs' exceptions and adjudged that the estate of the deceased guardian was liable to the respective plaintiffs for the whole amount of the note upon which the judgment was obtained, it appearing from the testimony that the note was amply secured, and that it was scaled with the consent of, or certainly without objection from, the guardian. The findings of law and fact by the master were overruled by the Circuit judge, and the report recommitted to the master to state the accounts of the deceased guardian in accordance with the Circuit decree. The defendant appeals from the decree of the Circuit Court; and the only question involved in

the appeal is as to the liability of the estate of the deceased guardian for the whole amount of the note upon which the judgment was obtained.

This court will always protect a guardian or other trustee acting in good faith and with proper diligence and care for the interests of the ward, or other *cestui que trust*. The law, however, requires a guardian to exercise the same diligence and care for the benefit of his ward, that a prudent man would do in the management of his own affairs, and the court will not allow a guardian to escape responsibility from mere tender consideration of his misfortune.

The amount of the judgment taken by the guardian represents but a fraction more than one-third of the amount of the note, without reference to the accrued interest for some seventeen years. There can be no doubt that at the time the judgment was taken the note was amply secured. Whilst there was doubt and uncertainty for several years after the war about the collection of notes of this character, yet all such doubts were solved and removed by the decision of this court, filed April 3, 1871, in the case of *Calhoun* v. *Calhoun*, 2 *S. C.*, 291, as well as by the decision in *Brewster* v. *Williams*, 2 *S. C.*, 455, filed July 6, 1871. The judgment obtained November 16, 1872, and acquiesced in by the deceased guardian, is in direct conflict with these decisions, one of which was filed seventeen months prior to said judgment. Under these circumstances the act of the deceased guardian cannot be considered prudent, nor can we conclude that the guardian has exercised proper care and diligence in protecting the rights and interests of his wards.

It is the judgment of this court that the judgment of the Circuit Court be affirmed in each of the above entitled cases.